**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**WALTER ROY ASWELL, III**                    **CIVIL ACTION NO. 12-cv-997**

**VERSUS**                                                **SECTION "C"**

**JOE CULPEPPER, ET AL**                        **HON. HELEN BERRIGAN**


## Order and Reasons

This matter comes before the Court on defendants' Motion for Summary Judgment. Rec. Doc. 34. Plaintiff opposes the motion. Rec. Doc. 38. The motion is before the Court on the briefs, without oral argument. Having considered the law, the facts, and the arguments of the parties, and for the reasons discussed herein, the Court GRANTS IN PART and DENIES IN PART defendants' motion.

### I.      Factual background

In this action, plaintiff, Walter Roy Aswell, III ("Aswell"), raises a claim of liability under 42 U.S.C. §1983 for the use of excessive force by officers of the Bogalusa Police Department, who include Lieutenant Patrick Lyons ("Lyons"), Patrolman First Class Chad Cassard ("Cassard"), Patrolman First Class Lavon Scott Seals ("Seals"), and Chief of Police Joe Culpepper ("Culpepper"); as well as Deputy Marshall John Summrall for the City of Bogalusa.

1

Rec. Doc. 1 at 6-8. The Court notes that in the complaint, plaintiff alleges excessive force under the Eighth Amendment, but appears to have changed his theory to excessive force under the Fourth Amendment in his opposition to the motion for summary judgment. The Court will analyze plaintiff's claim as a claim brought under the Fourth Amendment and will allow plaintiff to amend his complaint.

On April 20, 2011, Aswell and Logan Mills, a plaintiff in a related case, committed an armed robbery at a Capital One Bank in Bogalusa, Louisiana, and fled the bank in a Jeep, with Aswell driving. Rec. Docs. 34-6 at 10:12-18; 38-3 at 13:10-18:21. Lyons, Cassard, and Seals separately pursued Aswell and Mills in marked Bogalusa Police Department cars, and Sumrall joined the pursuit in an unmarked car. Rec. Doc. 34-8 at 10-13. Heading east down Highway 26, Aswell and Mills exchanged gunfire with the police officers. Rec. Docs. 34-8 at 13:10-15; 38-3 at 21:14-22:14. Eventually, the officers succeeded in disabling the Jeep, forcing Aswell and Mills to veer to the left of the highway and stop near a grocery store called Sheila's Store. Rec. Doc. 34-8 at 13:7-17. The three Bogalusa officers stopped their vehicles near the Jeep, and Sumrall arrived shortly thereafter. *Id*. All the officers testify to seeing Aswell and Mills exit the Jeep. *Id. See also* 34-7 at 16:2-17:2; 34-9 at 12:9-25. However, their recollections differ in many respects. Lyons testifies that he saw Aswell holding a pistol in his hand and, when Lyons told Aswell to stop, Aswell "pulled" the weapon. Lyons responded by shooting at Aswell. Rec. Doc. 34-9 at 12:20-25. Cassard and Seals stated they could not clearly see the driver's side of the Jeep when Aswell was exiting, but do not testify to seeing him holding a gun. Rec. Doc. 34-7 at 15:19-22; Rec. Doc. 34-10 at 13:14-17.

Once out of the Jeep, Aswell fled towards the nearby field. Rec. Doc. 34-7 at 19:3-11. Cassard drove his vehicle into the field in pursuit of Aswell and fired four rounds at Aswell. *Id*.

2

After seeing Aswell fall to the ground, Cassard drove towards a wooded area where he believed Mills had run. Rec. Doc. 34-7 at 21:17-19.

Sumrall also drove after Aswell. Upon seeing Aswell fall to the ground, Sumrall stopped his car roughly twenty or thirty feet away, got out and took cover behind the car door with his gun out. Rec. Doc. 34-8 at 16:1-18:6. According to Sumrall, Aswell lay face down on the ground, with either one or both arms under his body. *Id*. He stated that he and Lyons approached Aswell at roughly the same time from different directions. *Id*. at 21:4-23:18. Sumrall he shouted at Aswell to show his hands and eventually Aswell showed his right arm, though Sumrall later testified that he couldn't remember if Lyons pulled Aswell's arm from beneath his body or if Aswell complied on his own. *Id*. at 19:3-24, 26:18-21. Sumrall recalls that Aswell tried to get up and Lyons commanded him to stay on the ground. When Aswell continued to make his way to all fours, Lyons knocked him to the ground, striking Aswell on the back around the shoulder area with his fist. *Id*. at 28:23-32:15. Finding that he had no handcuffs, Sumrall asked Lyons to hand him his handcuffs and said he would cuff Aswell so that Lyons could check on his men who had gone after Mills. *Id*. at 33:6-16. Sumrall states that he did not see Aswell with a weapon, nor did he see a weapon in the immediate vicinity. *Id*. at 36:6-18, 39:13-40:23. He stayed with Aswell for several minutes until other officers arrived. *Id*. at 37:12-15.

Though Lyons and Sumrall apprehended Aswell together, Lyons' account of events conflicts with Sumrall's at several points. In addition, during his deposition, Lyons related multiple versions of the events. Lyons stated that he chased Aswell through the vacant field and fired on him. Rec. Doc. 34-9 at 19:3-8. Unlike Sumrall, Lyons averred that he saw Aswell with a gun. *Id*. Lyons initially stated that he patted Aswell down for weapons before Aswell was cuffed, then stated he did not remember if he had conducted a pat down. *Id*. at 25:22-27:19. He then

3

stated that he thought, but was unsure, that he gave his handcuffs to Sumrall and asked him to cuff Aswell, then left to check on the other officers before Aswell was cuffed. *Id*. at 28:17-32. Lyons also stated he never touched Aswell. *Id*. at 29:3-7. However, after being presented with an incident report in which he had previously stated that he had struggled with Aswell, Lyons said that he remembered that Aswell had tried to jerk away and fight while being handcuffed, but that he didn't remember striking Aswell. *Id*. at 54:5-17. This version of events tends to suggest that contrary to Lyons earlier recollection, that he was with Aswell when he was handcuffed. When asked to elaborate on his account, Lyons said that he was unable to, and that he could only recall what had been written in the incident report. *Id*. at 59:1-60:9.

Seals also drove his car in pursuit of Aswell, stopping in the field to allow Lyons to fire shots at Aswell. Rec. Doc. 34-10 at 17:6-20. Seals saw Aswell fall to the ground and pulled his car beside him. *Id*. at 19:10-20:17. Seals did not exit his car, instead leaving to chase after Mills. *Id*. at 22:5-20. Though he states that he was unsure where Aswell's arms were when he fell, Seals testifies that he did not see a weapon on Aswell. *Id.*

Finally, Aswell himself offers a very different version of events. His account initially matches those of Cassard, Sumrall, and Seals. He states that after stopping the Jeep by Sheila's Store, he exited and fled on foot away from the officers. Rec. Doc. 34-6 at 12:6-8; 14:7-20. He was shot twice, once in the right arm and once in the right hip, and fell to the ground face first. He does not know who fired the bullets that struck him. *Id.* at 15:1-17:21. He then states that handcuffs were put on him, and he was kicked and struck with a hard object, which he believes was either a baton or a gun, and that threats were made on his life. *Id.* at 20:1-5. 23:24-24:4, 31:19-24 Aswell avers that he was lying face down at the time and does not know who kicked him, but that he is sure it was a member of the Bogalusa Police Department, since he believed

4

that only they were at the scene at that time (in fact Sumrall was also present). *Id.* at 21:24-22:17. Aswell denies struggling with the officer. *Id.* at 22:21-22. As a result of injuries sustained during this incident, Aswell underwent surgery to place a plate over the fracture in his skull. *Id.* at 29:15-25. He suffers headaches, ringing in his ears, confusion, hearing loss and memory loss. *Id.* at 29:4-8. Aswell's radial nerve in his right arm was severed by a bullet, and he can no longer lift his right hand or straighten his fingers. *Id.* at 30:1-3.

On April 19, 2012, Aswell brought this Section 1983 lawsuit against defendants for using excessive force in violation of his Constitutional rights, and additionally making state law claims of negligence, intentional infliction of emotional distress, negligent supervision, and vicarious liability. Rec. Doc. 1 at 8.

## II.     Standard of review

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1996).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324,

106 S. Ct. at 2253. "[U]nsubstantiated assertions" and "conclusory allegations" will not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S. Ct. at 2510.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III.   Law and Analysis

#### a.   *Section 1983 claim against Lyons, Cassard, Seals and Sumrall*

##### i.  **Failure to state a claim**

Under the heading of a motion for summary judgment rather than a motion to dismiss, defendants first argue that Aswell's claim should be dismissed because Aswell fails to state a cause of action under Fed. R. Civ. Pro. 12(b)(6). Rec. Doc. 34-1 at 10. According to defendants, the complaint must be dismissed as it "fails to identify the person or persons that actually allegedly committed the constitutional violation." *Id.* at 11. However, the Fifth Circuit has explicitly rejected this reasoning. In *Bohannan v. Doe*, the Fifth Circuit considered a district court's dismissal of a Section 1983 claim on the ground that "[t]he court. . . does not consider

6

claims against unknown defendants. 527 Fed.Appx. 283, 291-92 (5th Cir. 2013). The Fifth

Circuit found that, to the contrary, "[t]his statement wholly mistakes the policy of federal courts

in favor of permitting the preliminary adjudication of claims against unnamed parties." *Id*. The

court affirmed the dismissal of the claim on different grounds, finding that the alleged conduct

did not rise to the level of deliberate indifference. *Id. See also*, *Colle v. Brazos Cnty*., 981 F.2d

237.

Moreover, this case is distinguishable from actions brought against unknown defendants.

Here, Aswell has named four individuals who were the only ones in the vicinity at the time he

was apprehended. Of these, he believes one or more used excessive force against him.

Defendants have not identified case law mandating that a case be dismissed under these

circumstances. Thus, the Court DENIES the motion for summary judgment on this ground.

### ii.   Qualified immunity defense

Defendants further assert that Cassard, Lyons, Sumrall, Seals and Culpepper are entitled

to qualified immunity. Rec. Doc. 34-1 at 12. The United States Supreme Court has set forth a

two-part test for determining whether government officials are entitled to the defense of qualified

immunity. The Court must decide (1) whether the facts alleged or shown by plaintiff make out a

violation of a constitutional right, and (2) whether that right was clearly established at the time of

the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 224 (2009) (quoting

*Saucier v. Katz*, 533 U.S. 194, 201 (2009)). It is within the Court's discretion to decide which of

the two prongs should be addressed first in light of the circumstances in the particular case at

hand. *Pearson*, 555 U.S. at 236.

Thus, the Court will first determine whether the second prong is met, asking whether the

right that was allegedly violated was clearly established at the time of the incident. Here, Aswell

alleges that his Fourth Amendment right to be free of the use of excessive force was violated. Specifically, Aswell claims that after the officers shot him twice and handcuffed him, they proceeded to kick and beat him, fracturing his skull. Rec. Doc. 38 at 11.

The incident at issue occurred in 2011. At that time, the law in this jurisdiction provided that "the use of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). Here, the parties agree that shots were fired at the pursuing officers from the Jeep that Aswell drove. Rec. Doc. 38-1 at 3. The officers who saw Aswell exit the Jeep once it had been disabled testify either that they could not see whether he was holding a firearm or state that he was holding a firearm. Rec. Docs. 34-9 at 12:20-25; 34-7 at 15:19-22; 34-10 at 13:14-17. Aswell himself states that he did not shoot at defendants while in the Jeep, but that his gun was most likely in the front pouch of his sweatshirt when he exited the car. Rec. Doc. 38-3 at 24:6-26:8. After Aswell exited from the car, the testimonies of all parties are in agreement that when he fell down as a result of his gunshot wounds, he was fleeing from the officers with his back turned.

The Fifth Circuit has held that "[t]he excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the. . . shooting . . . .". *Sanchez v. Fraley*, 376 Fed.Appx. 449, 452 (5th Cir. 2010) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001). In *Sanchez v. Fraley*, the Fifth Circuit considered a case with similar conflicts in the parties' testimony. In that case, a police officer fired multiple shots at a man fleeing apprehension. Testimony showed that the officer was aware that that the man was a suspect in a double homicide, that he had heard on police radio that he had a gun, and that he saw the suspect "digging in his waistband and pointing his hands under his

8

shirt as though aiming a weapon." 376 Fed.Appx. at 451-52. However, an eyewitness testified that the suspect had his hands at his sides and had stopped running when the officer fired at him. *Id*. Under those circumstances, the Fifth Circuit found that "a rational jury could find that the [officer's] use of excessive force was excessive." *Id*. However, the Court finds that *Sanchez* is distinguishable from the instant action. Here, Aswell admits that he was fleeing arrest and that he likely had a gun on his person at the time. Moreover, Aswell had recently committed an armed robbery and emerged from a car from which gunshots were fired, one officer testifies he saw a firearm in Aswell's hands, and the remaining officers at the scene all testified that they did not have a clear view of both of his hands prior to firing at him. Under these circumstances, the Court finds that the use of deadly force to stop Aswell from fleeing was not objectively unreasonable. *See Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") Accordingly, the Court finds that defendants are entitled to qualified immunity against Aswell's claim for damages from injuries arising out of the gunshots fired at him while he was fleeing, and need not reach the other prong of the qualified immunity test with regards to this conduct.

The Court now turns to the actions that followed after Aswell had fallen from his gunshot wounds. At the time of the incident, the Fifth Circuit has established that continuing to use significant force after an arrestee has already been handcuffed and subdued is objectively unreasonable. In *Bush v. Strain*, the Fifth Circuit considered a situation in which a section 1983 plaintiff resisted arrest while an officer attempted to handcuff her. In her attempts to get free, both the plaintiff and the officer fell onto the rear window of a nearby vehicle, and a second officer had to help restrain her. Once she was cuffed and no longer resisting, the officer "placed

9

his hand behind her neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth." 513 F.3d 492, 495-96 (5th Cir. 2008). The court held that "[w]hile the Fourth Amendment's reasonableness test is not capable of precise definition or mechanical application, the test is clear enough that [the officer] should have known that he could not forcefully slam [the plaintiff's] face into a vehicle while she was restrained and subdued." *Id*. at 502.

The Fifth Circuit has since re-affirmed the principle that using force on an arrestee who is no longer resisting arrest is objectively unreasonable. In *Anderson v. McCaleb*, the Fifth Circuit held that a police officer "should have known that he could not continue to shock Anderson with the taser after he was no longer resisting arrest" and "should have known that he could not beat Anderson after he stopped resisting arrest or slam Anderson to the ground after he was handcuffed." 480 Fed.Appx. 768, 773 (5th Cir. 2012). In that case, the plaintiff fled police officers, then turned around to surrender while holding an iPod. The officers stated that the plaintiff had ignored their repeated commands to get to the ground, and that the object in his hand resembled a weapon, leading to their decision to use force to apprehend him. *Id*. at 769-70.

Like the plaintiffs in *Bush* and *Anderson*, Aswell initially fled or resisted arrested before being apprehended. Also like those plaintiffs, Aswell claims that the officers used excessive force after he had already been restrained and was no longer resisting arrest. Rec. Doc. 38-3 at 40. Thus, the Court finds that the alleged conduct violated clearly established law.

The Court now turns to the other prong of the qualified immunity test and asks whether plaintiff has made out a violation of a constitutional right. Courts analyze Fourth Amendment excessive force claims by asking if the conduct was objectively reasonable. *Graham v. Connor*, 490 U.S. 385, 388 (1989). Under the Fifth Circuit's jurisprudence, to overcome an officer's

claim of qualified immunity, a plaintiff making an excessive force claim must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). The Court must evaluate evidence in a light most favorable to the plaintiff. *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012).

The Court finds that Aswell has met the first two prongs of the Fifth Circuit's test. In his deposition, Aswell states that a bullet severed the radial nerve in his right arm, and as a result he can no longer lift his right hand or straighten his fingers. Rec. Doc. 34-6 at 30:1-3. Moreover, he claims that the kicking and beating he received fractured his skull. Rec. Doc. 34-6 at 29:15-25. The officers have admitted to shooting at Aswell, though they are unsure which of them fired the gunshots that ultimately struck Aswell. In addition, none of the defendants' accounts offer an alternative explanation for how Aswell's skull was fractured. Thus, Aswell has shown injuries which resulted directly and only from the alleged use of excessive force.

Moreover, having already found that the alleged conduct violated clearly established law, the Court also finds that in Aswell's version of events, the defendants' conduct was clearly unreasonable. However, defendants have presented evidence that contradicts Aswell's version of events. None of the officers named as defendants here admits to beating and kicking Aswell after he was placed in handcuffs. Cassard claims that after shooting Aswell, he proceeded to chase after Mill. Seals claims that he saw Aswell fall after being shot, but did not get out of his car, and instead assisted Cassard in pursuing Mills. Rec. Doc. 34-7 at 21:17-19. Sumrall avers that he witnessed Lyons striking Aswell in his back shoulder before Aswell was put in handcuffs, but says he did not kick or beat Aswell. Rec. Doc. 34-8 at 28:23-32:15. In his deposition, Lyons initially denied ever striking Aswell, but after being confronted with conflicting information

from an earlier report, he admitted to struggling with Aswell before Aswell was handcuffed, but not after. Rec. Doc. 34-9 at 54:5-17. Though defendants do not contradict Aswell's claim that his skull was fractured during the incident, none of the officers' accounts explain how Aswell sustained the skull injury.

Given the vast discrepancy between plaintiff and defendants' accounts of what occurred following Aswell's cuffing, the Court finds that there are genuine issues of material fact that prevent a finding of whether defendants' actions were objectively unreasonable. The Fifth Circuit has previously endorsed that when material fact issues are in dispute that prevent adjudication of a qualified immunity defense at the summary judgment stage, the district court may properly submit the issue of qualified immunity to the jury. *See Snyder v. Trepagnier*, 142 F.3d 791, 799-800 (5th Cir. 1998) ("[I]f . . . there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.") Accordingly, the Court denies summary judgment on the issue of whether the officers are entitled to qualified immunity for the alleged kicking and beating of Aswell after he had fallen to the ground, so that the question may be submitted to the jury for determination of the facts in dispute.

### iii.  Heck Exhaustion

Defendants argue that plaintiff's suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that "when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." If the answer is yes, then the complaint must be dismissed unless the conviction or sentence has already been invalidated. If the answer is no, then the claim will be allowed to proceed. 512 U.S. at 487.

In support of its argument that *Heck* bars the instant suit, defendants cite to *Hudson v. Hughes*, 98 F.3d 868 (5th Cir. 1996) and *Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008), in which plaintiffs brought claims for excessive force. However, both these cases differ from the instant action in that the crimes for which the Section 1983 plaintiffs had been convicted involved conduct that, if true, would have rendered the officers' actions objectively reasonable. For instance, in *Hudson*, the plaintiff was arrested and convicted of battery of an officer, for which self-defense is a justification. The plaintiff alleged in his section 1983 action that during his arrest, a police officer incited a K-9 dog to bite him while he was lying face down, then kicked him and hit him with a flashlight. 98 F.3d at 870. The Fifth Circuit stated, "because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that the officers used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer." 98 F.3d at 873. In other words, a finding that the officers had used excessive force in Hudson's arrest would allow Hudson to argue that, rather than committing battery of an officer, Hudson had acted in self-defense, thereby invalidating his conviction.

In *Connors v. Graves*, the plaintiff had attempted and failed to rob a bank, then fled by car with law enforcement officers in pursuit. During the pursuit, the plaintiff allegedly fired his weapon at the officers. After attempting to deflate his tires, and upon seeing the plaintiff's vehicle traverse the interstate median and begin traveling in the opposite direction, one of the officers fired his gun and struck the plaintiff in the forearm. The plaintiff subsequently pleaded guilty to discharging a weapon from a motor vehicle under Louisiana Revised Statute 14:94(E). 538 F.3d at 378. The court reasoned that by pleading guilty, "Connors essentially admitted that the officers acted reasonably in using deadly force to effectuate his arrest." *Id*. at 377. The court

13

found that since the "high-speed pursuit of Connors was *still in progress*, the officers could have reasonably concluded that Connors was about to commit a second violent felony," making their decision to use deadly force a reasonable one. *Id.* In both cases, the plaintiffs brought suit against officers for using force to apprehend them when both plaintiffs had been convicted of crimes they had committed while resisting apprehension.

Here, Aswell pleaded guilty to armed robbery, armed robbery with a gun, three counts of attempted first degree murder of Cassard, Seals, and Lyons, illegal use of weapons, aggravated obstruction of a highway, and possession of stolen property. Rec. Doc. 34-13. Defendants offer a conclusory argument that because plaintiff alleges excessive force in this lawsuit, that the lawsuit challenges the legitimacy of these convictions. Rec. Doc. 34-1 at 18-19. However, defendants do not show how a ruling in plaintiff's favor in this lawsuit would undermine the particular factual or legal bases of Aswell's convictions. Moreover, defendants have not specified whether any of the convictions resulted from Aswell's conduct after he was subdued and in handcuffs. Having found that defendants are entitled to qualified immunity for firing gunshots at Aswell while he was fleeing, the Court will focus only on Aswell's treatment after he was handcuffed. The Court finds that Aswell's claim that defendants used excessive force when they allegedly beat and kicked him *after* he was handcuffed and non-resistant is factually and conceptually distinct from the conduct that led to his convictions and the force that defendants used to bring Aswell into their custody prior to his handcuffing. Indeed, because the alleged excessive force occurred after Aswell was subdued, this case is distinguishable from *Hudson* and *Connors*, where the officers' conduct at issue had been used to bring the plaintiffs into submission.

Instead, the Court finds the Fifth Circuit's reasoning in *Bush v. Strain* to be on point. In that case, the Fifth Circuit held that the plaintiff's criminal convictions were not inherently at

14

odds with her excessive force claim because the alleged excessive force occurred after the plaintiff had stopped resisting arrest, and reversed the magistrate judge's conclusion to the contrary. 513 F.3d at 499-500. Accordingly, the Court finds that plaintiff's claims are not barred by *Heck*.

### b. *Municipal liability*

Aswell also states a claim of municipal liability, alleging that Culpepper in his official capacity is liable for Aswell's injuries. Rec. Doc. 1 at 9. (The Court notes that though the complaint lists Culpepper in his official capacity as a defendant, the violations alleged in Count I are improperly directed against Culpepper in his individual capacity.) Municipalities may be held liable for constitutional violations under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court held that a local government may be sued under §1983 only if the alleged constitutional violation arose from "the execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy. . ." *Id*. at 694. In the absence of an official policy, a plaintiff may also succeed on a claim of municipal liability if it can show a single unconstitutional action by a final policymaker. *Bolton v. City of Dallas, Tex*., 541 F.3d 545, 548 (5th Cir. 2008). In addition, a failure to train can give rise to municipal liability. *City of Canton, Ohio v. Harris,*, 489 U.S. 378, 387 (1989); *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000). Defendants assert that "there is no evidence and Plaintiff cannot prove that [the] alleged misconduct was pursuant to some unknown official policy of the police department and/or the City of Bogalusa." Rec. Doc. 34-1 at 21. Aswell counters that Culpepper is liable both

as a final policymaker and because the City of Bogalusa failed to adequately train its police force. The Court will discuss each of these theories below.

i.   Final policymaker

Aswell argues that Culpepper is a final policymaker, and that he essentially approved his subordinates' decision to use excessive force by failing to take action against the implicated officers after Aswell alleged that he had been beaten during his taped interview. Rec. Doc. 38 at 14. A section 1983 plaintiff may establish liability by alleging a single unconstitutional action by a municipal actor, provided that the actor is a final policymaker. *Bolton*, 541 F.3d at 548. Thus, the Court's task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id.* (internal citations omitted). Whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

The Fifth Circuit has distinguished between an official with final decisionmaking authority and one with final policymaking authority, specifying that "when an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Bolton*, 541 F.3d at 549 (5th Cir. 2008) (quoting *City of St. Louis*, 485 U.S. at 108) (internal quotations and citations omitted). Furthermore, when determining whether a city official has policymaking power, the Fifth Circuit has inquired into whether the Charter or city council "delegated policymaking power" to that official. *Id.* at 550.

16

Looking to Bogalusa's municipal code of ordinances and to Louisiana's state law, the Court finds that Culpepper is not a final policymaker with respect to taking disciplinary action against officers. The Bogalusa Code of Ordinances provides that the police chief:

> shall direct and be responsible for the preservation of public peace and order; prevention of crime; apprehension of criminals; assistance to the courts and other law enforcement officials; and the enforcement of the laws of the state and the ordinances of the council.

City of Bogalusa Code §4-05 (2012). With its directive that the chief "direct and be responsible", this provision may delegate some policymaking authority to the police chief. At the same time, the language shows that the chief's responsibility for "enforcement of the laws of the state and the ordinances of the council" are executive rather than legislative. *See Bolton*, 541 F.3d at 550 ("The repeated references to the city manager's responsibility for 'administration' make clear that the position is executive rather than legislative. . . .") Looking to Louisiana's Revised Statutes, the Court finds that state law explicitly exempts disciplinary actions from the police chief's decision making authority. State law provides:

> The marshal shall be the chief of police and shall be ex officio a constable. He. . . ***shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel***.

La. Rev. Stat. Ann. 33:423 (emphasis added). The Revised Statutes further state that the chief of police:

> is authorized to immediately effect disciplinary action on police personnel and to dismiss any such personnel subject to the approval of the governing authority of the municipality. ***Any such disciplinary action or dismissal shall be deliberated by the governing authority at the first special or regular meeting of the governing authority after any such determination has been made by the chief of police.***

La. Rev. Stat. Ann. 33:423 (emphasis added). Because state law requires the police chief's disciplinary actions to be reviewed by a governing authority and does not grant policymaking

authority to the police chief, the Court finds that the police chief lacks policymaking authority over disciplinary actions taken against police personnel.

Plaintiff argues that Culpepper is the final policymaker concerning discipline. Rec. Doc. 38 at 13. However, Culpepper's deposition reflects differently. In his deposition, Culpepper describes the officer disciplinary process, which requires him to conduct an investigation and hold a pre-disciplinary hearing, after which he must make a recommendation to the mayor, who "has the final say-so" and "does what he wants to do." Rec. Doc. 38-11 at 24-25. Culpepper testifies that he is a final decisionmaker only in cases where a reprimand that does not involve a loss of pay. *Id*. at 28-29. However, there is no indication that these reprimands constitute policymaking, rather than "discretionary decisions" that are "constrained by policies" not of the chief's making, which the Fifth Circuit in *Bolton* clarified as being insufficient to show policymaking authority. *Bolton*, 541 F.3d at 549. Thus, the Court finds that Culpepper is not a final policymaker with respect to taking actions against officers who may have employed excessive force. Therefore, his actions cannot trigger municipal liability. Accordingly, the Court GRANTS the motion for summary judgment on this ground.

ii.   Failure to train

In addition, Aswell claims that Culpepper is liable due to a failure to adequately train his police officers. To establish liability for a failure to train, Aswell must show 1) inadequate training procedures; 2) that inadequate training caused the officers to use excessive force on Aswell; and 3) the deliberate indifference of municipal policymakers. *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

Applying the first prong, the Court finds that there is an issue of fact over whether training was inadequate. Although plaintiff claims that Culpepper testified that there was no

18

tactics training, the Court reads Culpepper's deposition differently. When asked who was responsible for tactics training in 2011, Culpepper responded "did not have one." Rec. Doc. 38-11 at 19: 9-14. It is unclear from the transcript whether Culpepper meant to testify that the department did not have a designated person responsible for tactics training or did not offer any tactics training whatsoever. However, a few lines later, Culpepper testifies that officers did receive training at "basic academy." *Id*. at 9:15-20:3. Earlier, Culpepper states that the department is mandated to fulfill certain training requirements, though he admits that the department has had "hit and miss training officers" who have not "held up any length of time." *Id*. at 18:23-19:8. Thus, according to Culpepper, although the training program was inconsistent and a "work in progress," the force did offer the minimal required training. However, Culpepper's assertions are contradicted by Atkins' declaration. Atkins claims that during his eight years on the force from 2004 to 2012, he received no use of force training. Rec. Doc. 38-5 at 4. Because of the conflicting information from Atkins and Culpepper, the Court finds there is an issue of fact over the adequacy of the training.

However, even if the training was inadequate, Aswell has not made a showing of deliberate indifference. In order to prove deliberate indifference, a Section 1983 plaintiff must show that the failure to train was tantamount to a "deliberate or conscious choice to endanger constitutional rights." *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998). Thus, the Fifth Circuit has held that to show deliberate indifference, "notice of a pattern of similar violations is required. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (citing *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). "The prior acts must be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id*. (*sic*). While a single incident exception exists, "a plaintiff

19

must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation. *Id*.

For example, in *Snyder v. Trepagnier*, the Fifth Circuit found there was no deliberate indifference because plaintiffs had not shown evidence of "a pattern or practice of constitutional violations committed by overstressed New Orleans police officers" and as a result, "[t]here was no evidence showing that the city was aware of the supposedly high stress levels in the NOPD or knew that the absence of a stress management program was likely to endanger the constitutional rights of its citizens." 142 F.3d at 799. Here, plaintiff has not shown a pattern of excessive force violations that would have put Culpepper and the City of Bogalusa on notice that training was constitutionally inadequate. Instead, Culpepper has testified that he received no excessive force complaints in the previous five years. Rec. Doc. 38-11 at 21:24-22:20. Atkins avers that he once witnessed two Bogalusa police officers holding a man in a neck grip with his pants around his ankles. Atkins states that the man took refuge in Atkins' car because he thought the other officers were going to kill him and that he observed blood coming from the man's mouth. Rec. Doc. 38-5 at ¶15-16. While troubled by this prior event, the Court lacks sufficient information about whether the man had resisted arrest and what injuries he ultimately sustained to determine if the incident was "fairly similar" to what Aswell experienced. More importantly, even if sufficiently similar, one prior incident does not rise to the level of a "pattern of similar violations." Thus, the Court finds that Aswell has not shown of deliberate indifference.

Accordingly, the Court GRANTS summary judgment on this ground, and DISMISSES Aswell's claims of municipal liability.

### c. *State law claims*

Defendants argue that plaintiff's state law claims should be dismissed because Louisiana law entitles law enforcement officials to qualified immunity from suit for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Moresi v. Dept. of Wildlife and Fisheries*, 567 So.2d 1081, 1094 (La. 1990). As defendants themselves point out, qualified immunity under Louisiana state law mirrors the standard for qualified immunity found in federal law. Rec. Doc. 34-1 at 21. Thus, the Court GRANTS summary judgment in defendants' favor for damages arising out of defendants' shooting of Aswell as he was fleeing, and DENIES summary judgment for damages from the alleged kicking and beating of Aswell after he fell from his gunshot wounds, finding that there are material facts in dispute that prevent it from determining whether qualified immunity may be extended to the defendants at this stage.

## IV.    Conclusion

Accordingly, IT IS ORDERED that defendants' Motion for Summary Judgment (Rec. Doc. 27) is GRANTED in part and DENIED in part as follows:

- Cassard, Lyons, Sumrall, Seals and Culpepper in his individual capacity are entitled to qualified immunity against claims arising out of the shooting of Aswell as he was fleeing from arrest, and these claims are accordingly DISMISSED;

- Aswell's claims against Culpepper in his official capacity for municipal liability are DISMISSED;

- The motion for summary judgment is DENIED in all other respects.

21

New Orleans, Louisiana, this 13th day of April, 2015.

Helen G. Berrigan
United States District Judge